IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 92-4552
_____


IN THE MATTER OF: THELTON COUTEE and
                  EMOGENE COUTEE,

                                        Debtors.


SECURITY FIRST NATIONAL BANK,

                          Appellant-Cross-Appellee,

                        versus

BRETT BRUNSON and FUHRER FLOURNOY
HUNTER & MORTON,

                          Appellees-Cross-Appellants.


_____

Appeals from the United States District Court
for the Western District of Louisiana
_____


( February 5, 1993)

Before GARZA, Reynaldo G., HIGGINBOTHAM, and DeMOSS, Circuit Judges.

PER CURIAM:

Security First National Bank and the law firm of Fuhrer, Flournoy, Hunter & Morton appeal the decision of the district court holding that payment by chapter 7 debtors of a Security First note unconditionally guaranteed by the law firm was an avoidable preference under § 547 of the Bankruptcy Code, 11 U.S.C. § 1 et seq., recoverable from the bank as the initial transferee under 11 U.S.C. § 550(a)(1), and that the firm's guaranty of the note was not extinguished by the voided payment. We affirm.

Fuhrer, Flournoy, Hunter & Morton is a plaintiff's personal injury firm. To assist its clients financially pending litigation, the firm would arrange for Security First to loan the clients money, with the firm serving as unconditional guarantor on the notes. These loans were made in reliance only on the guaranty of the firm; the bank made no investigation into the creditworthiness of the clients. The money loaned by the bank represented amounts which could be ethically advanced to clients by the firm itself under the Louisiana Code of Professional Conduct.

Thelton and Emogene Coutee were represented by the firm in a personal injury suit, in which they were awarded a $48,000 judgment in November 1989. They had borrowed $24,644 in June 1989 from Security First under the arrangement described above. When the Coutees received the check in satisfaction of their judgment in December 1989, they endorsed it to the firm, which deposited the funds into its trust account. The firm then claimed its legal fees out of the funds,[1] returned a portion of the award to the Coutees, and paid the Security First note in full with the remaining money. Security First marked the note paid and delivered it to the firm, which in turn delivered it to the Coutees.

---

[1]The legal fees were disputed. A contingent fee arrangement called for the Coutees to pay an attorney's fee of 33-1/3% of gross recovery in addition to necessary costs and expenses. The dispute was settled when the firm reduced its fees and expenses to $12,587.08, allowing it to return $2,500 to the Coutees. These negotiations took place after the $48,000 was deposited in the firm's trust account.

Within ninety days of the payment of the note, the Coutees filed a voluntary petition for Chapter 7 bankruptcy. In November 1990, the bankruptcy trustee filed this action against Security First, seeking to avoid the payment of the note on grounds that it was a preference under § 547 of the Bankruptcy Code. Security First, having been denied a motion to compel joinder of the firm, filed a third party demand against the firm, seeking recovery on the unconditional guaranty in the event that the trustee was successful in avoiding the payment of the note.

The case was submitted to the bankruptcy court on fully stipulated facts. That court held that (1) the payment of the note was void as a preference, (2) the bank was the "initial transferee" under § 550(a)(1) of the Bankruptcy Code, and (3) the firm's guaranty had been satisfied by payment of the note. On appeal by the bank, the district court affirmed the holding that the bank was the initial transferee, but reversed the holding that the guaranty was extinguished by the voided payment. Both the bank and the firm appeal its decision to this court.

II.

A.

Security First contends that the firm, not it, was the initial transferee of the funds because the firm received the money directly from the Coutees.

Section 547 of the Bankruptcy Code provides, in pertinent part, that a trustee may avoid a transfer made by the debtor within 90 days before the filing of the bankruptcy petition while the

3

debtor was solvent to a creditor on account of an antecedent debt if the transfer enables the creditor to receive more than a designated share of the debtor's estate. Section 550(a)(1) provides that the trustee may recover a preference avoided under § 547 from "the initial transferee of such transfer or the entity for whose benefit such transfer was made."[2] As noted, the district court concluded that the bank was the initial transferee of the funds, and that the firm was a mere conduit. Because the essential facts of the case are not in dispute, questions regarding the legal relationship of the parties is one of law, so we review the district court's determination <u>de novo</u>. <u>See</u> <u>Horn v. C.L. Osborn Contracting Co.</u>, 591 F.2d 318, 320 (5th Cir. 1979).

The Bankruptcy Code does not define "initial transferee," and this circuit has not articulated a definition. Other circuits that have, however, use a dominion or control test to determine whether a party is an initial transferee. <u>See</u>, <u>e.g.</u>, <u>Bonded Financial Services, Inc. v. European American Bank</u>, 838 F.2d 890 (7th Cir. 1988); <u>In Re Chase & Sanborn Corp.</u>, 848 F.2d 1196 (11th Cir. 1988); <u>In Re Columbia Data Products, Inc.</u>, 892 F.2d 26 (4th Cir. 1989); <u>In Re Bullion Reserve of North America</u>, 922 F.2d 544 (9th Cir. 1991); <u>In Re Baker & Getty Financial Services, Inc.</u>, 974 F.2d 712 (6th

---

[2]A trustee may not recover an avoidable preference from a transferee other than the initial transferee if the transferee takes for value, in good faith, and without knowledge of the voidability of the transfer avoided. 11 U.S.C. § 550(b)(1). Here, the trustee stipulated that Security First did take for value, in good faith, and without knowledge of the voidability of the transfer. Thus, the trustee may recover from Security First only if it was the initial transferee.

4

Cir. 1992).  Under this test, a party that receives a transfer directly from the debtor will not be considered the initial transferee unless that party gains actual dominion or control over the funds.  See Bonded, 838 F.2d at 893.[3]

In Bonded, the Seventh Circuit held that dominion over funds means the right to put the money to one's own use.  838 F.2d at 893.  According to that court, an entity does not have dominion over the money until it is, in essence, "free to invest the whole [amount] in lottery tickets or uranium stocks" if it wishes.  See Bonded, 838 F.2d at 894.[4]  In Bonded, the court held that the intermediary party was not the initial transferee because it held the funds "only for the purpose of fulfilling an instruction to make the funds available to someone else."  Id. at 893.

Adopting the dominion or control test, we find that the bank, not the firm, was the initial transferee of the funds.  As the district court noted, the funds were deposited into the firm's trust account, as opposed to its business account, indicating that

---

[3]Where this is not the case, the intermediary party is often referred to as a mere conduit or agent.  See Lippi v. City Bank, 955 F.2d 599, 611 (9th Cir. 1992); Chase & Sanborn, 848 F.2d at 1200; Columbia Data Products, 892 F.2d 28 (4th Cir. 1989).

[4]Dominion or control means legal dominion or control.  Thus, the fact that the firm could have violated its fiduciary obligation to the Coutees by taking the money out of the trust account and spending it as it pleased would make no difference in the analysis.  See, e.g., In Re Baker & Getty Financial Services, Inc., 974 F.2d 712 (6th Cir. 1992) (holding that agent was not initial transferee even though he could have "violated his [principal's] instructions and taken the cash to a race track or a jewelry store").  But cf. In Re Concord Senior Housing Foundation, 94 B.R. 180, 182 (Bankr. C.D. Cal. 1988) (holding that fiduciary who misappropriated funds for his own use became the initial transferee).

5

they were held merely in a fiduciary capacity for the Coutees. Moreover, the negotiations regarding the firm's legal fees, which occurred after it received the funds, indicate that the firm was not free at that time simply to keep the money. The only control exercised over the funds was the control delegated to the law firm by the Coutees. As the bankruptcy court noted, "[t]he law firm, under Louisiana law, was required to keep the client's funds in an identifiable trust account in order to avoid the charge of conversion." See Louisiana State Bar Ass'n v. Gross, 576 So.2d 504 (La. 1991).

The bank urges that "this Court should disregard the Bank's role in order to identify who in fact was the creditor," and that the firm, not the bank, actually loaned the money.[5] The bank's position ignores the obvious; that no matter how instrumental the firm was in assisting the Coutees in obtaining the loan, it was still the bank that loaned them the money. The firm's role with respect to the received money was to accept the funds in settlement of its client's case, deposit the money in trust, keep as fees only what the Coutees agreed to, and pay the rest to the bank on behalf of the Coutees in satisfaction of their loan. Cf. In Re Fabric

---

[5]The bank's contention hinges on its interpretation of one of the stipulations of fact, which reads:

> 6. The firm arranges for their clients to obtain loans from the Bank. These loans are arranged for purposes for which an attorney may ethically advance money to a client under the Louisiana Code of Professional Conduct.

The stipulation does not state that the firm itself advanced funds to the Coutees.

Buys of Jericho, Inc., 33 B.R. 334, 337 (Bankr. S.D.N.Y. 1983) (holding that the law firm that accepted settlement check on behalf of client, deposited check into escrow account separate from firm's working accounts, and paid funds to client was mere conduit, not initial transferee). The law firm had no legal right to put the funds to its own use, and thus lacked the requisite dominion required to be the initial transferee.

## B.

The firm contends that the district court erred in holding that its guaranty obligation was not extinguished by the avoided transfer to the bank.

Because the payment to the bank was an avoidable preference, the parties are returned to the status quo ante; it is as if the payment was never made. The firm does not contest the district court's holding that the accessory obligation of suretyship thus survived when the payment of the principal obligation was voided, under La. Civ. Code Ann. arts. 3035, 3059.

Instead, the firm brings its arguments under La. Rev. Stat. Ann. § 9:5001, which creates a statutory privilege in favor of attorneys with respect to their fees and amounts advanced to a client as ethically permitted. The firm contends that under the statute, it enjoys secured creditor status with respect to the funds received from debtors. As stated above, however, the firm did not advance any funds to the Coutees; therefore, the statutory privilege does not apply.

Additionally, the firm seems to argue that because it would not be subject to a preference action if it had advanced the money itself (by virtue of its alleged secured status under 9:5001), see 11 U.S.C. § 547(b)(5), its guaranty obligation should also be privileged. There is nothing in the Louisiana statute, however, to indicate that the attorney privilege applies to an obligation guaranteed by an attorney, as opposed to one owed to him. To the contrary, because this statute creates a privilege or lien in derogation of common rights, it should be strictly construed and may not be extended by analogy or implication. Calk v. Highland Construction & Manufacturing, Inc., 368 So.2d 1100, 1101 (La. 3d Cir.), rev'd on other grounds, 376 So.2d 495 (La. 1979).[6]

Finally, the firm contends that its payment of the note out of its trust account should extinguish its guaranty obligation because it would violate concepts of fairness and equity to require the firm to pay the bank a second time. We have held, however, that the money deposited in the trust account was never the firm's money at all; thus, it never even paid the bank once. It was precisely the risk of the clients' insolvency that the firm assumed when it signed the unconditional guaranty. It cannot now avoid that risk by attempting to convert the transaction into something that it was not.

III.

For the foregoing reasons, the judgment is AFFIRMED.

---

[6]Additionally, there is no authority indicating that the firm's alleged secured status somehow transfers to the bank.