

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-22-00046-CV

KELLY SHANE HEARNE, Appellant

V.

RIVERSOURCE LIFE INSURANCE COMPANY AND
AMERIPRISE FINANCIAL SERVICES, LLC, Appellees

On Appeal from the 62nd District Court
Lamar County, Texas
Trial Court No. 91038

Before Stevens, C.J., van Cleef and Rambin, JJ.
Opinion by Chief Justice Stevens

# OPINION

In a prior suit, Kelly Shane Hearne obtained a judgment in excess of $360,000.00 against Charles Duncan McMillan for injuries he suffered while working for McMillan's company, Anthony Sign Company. In this suit, Hearne sued McMillan, RiverSource Life Insurance Company, and Ameriprise Financial Services, LLC, under the Texas Uniform Fraudulent Transfer Act (TUFTA). Hearne alleged that, after McMillan was served with citation in the underlying tort suit, McMillan fraudulently transferred $238,000.00 from the sale of his business, Anthony Sign Company, to Ameriprise and/or RiverSource to purchase an annuity (the RiverSource Annuity) and fund an individual retirement account. Riversource and Ameriprise moved for summary judgment, claiming that they were not transferees under TUFTA or, alternatively, that they were not liable because the transfer was in good faith. After a hearing, the trial court granted Riversource and Ameriprise's motion and dismissed the case.

On appeal, Hearne challenges the summary judgment in favor of Ameriprise and RiverSource and asserts that the trial court erred in (1) finding that Appellees were not transferees under TUFTA, (2) finding that Appellees acted in good faith, and (3) overruling his objections to Appellees' summary judgment evidence. Because we find that the trial court did not err in finding that Appellees were not transferees under TUFTA, we affirm the trial court's judgment.

## I.      Procedural Background

In his live pleading, Hearne alleged that McMillan transferred the proceeds of the sale with intent to hinder, delay, or defraud Hearne. *See* TEX. BUS. & COM. CODE ANN.

2

§ 24.005(a)(1). As to Appellees, Hearne alleged that they had notice of McMillan's intent to hinder, delay, or defraud Hearne because McMillan informed them that his purchase of the RiverSource Annuity was intended for the protection of his assets. As relevant here, Hearne sought the following in his prayer:

a. avoidance of the transfer or obligation to the extent necessary to satisfy [Hearne's] claims . . . ;[1] [and]

b. money damages from any and all Defendants, jointly and severally, up to the value of the relevant property/funds transferred, such damages being no less than the value of the relevant property – funds transferred at the time of transfer and no greater than the value of such relevant property/funds transferred at the time the jury returns a verdict and/or the court signs a judgment in this case (any money damages sought by Plaintiff in this case over that amount will be sought solely from Defendant Charles Duncan McMillan).[2]

Appellees filed a motion for summary judgment in which they sought dismissal of all claims against them (1) because they were not transferees under TUFTA, and in the alternative, (2) because they had no liability under TUFTA since the transfer was in good faith and for reasonably equivalent value. In addition, if the trial court found that they were necessary parties, Appellees requested an order that they were *in rem* defendants only, not subject to liability or relief beyond complying with an order to rescind the transactions and/or to turn over any assets that they held for McMillan.

As relevant to this opinion, Appellees' summary judgment evidence showed that Ameriprise is a securities broker dealer and registered investment advisor and that RiverSource

---

[1] *See* TEX. BUS. & COM. CODE ANN. § 24.008(a)(1).

[2] *See* TEX. BUS. & COM. CODE ANN. § 24.009(b) ("[T]o the extent a transfer is voidable in an action by a creditor under Section 24.008(a)(1) of this code, the creditor may recover judgment for the value of the asset transferred, as adjusted under Subsection (c) of this section, or the amount necessary to satisfy the creditor's claim, whichever is less.").

3

is an affiliate of Ameriprise that offers insurance, annuities, and investment products focused on growing and protecting client income through retirement. James M. Callaway, McMillan's financial advisor, is an Ameriprise franchisee and an agent for RiverSource. In 2016, McMillan opened an IRA account with Ameriprise, with Callaway as his financial advisor, and transferred an existing IRA account to Ameriprise from another firm. According to Callaway, before he knew about the underlying lawsuit, he had talked with McMillan about McMillan's "options for generating future retirement income after he sold his business, including the use of an annuity" and maximizing his IRA contributions. In January 2017, McMillan deposited $238,000.00 with Ameriprise, and that same month, he purchased the RiverSource Annuity with an initial premium of $225,000.00 and made two $6,500.00 contributions to his IRA account for 2016 and 2017.

Callaway testified,

As an accountholder with Ameriprise, Mr. McMillan can deposit funds into his Ameriprise accounts, can withdraw funds from his Ameriprise accounts, and can transfer the funds in his Ameriprise accounts within Ameriprise or to another financial institution at his discretion. For certain of the accounts, there may be tax or other penalties for early withdrawal based on applicable laws, but such penalties do not prevent McMillan from making such withdrawals. At all times since McMillan became an Ameriprise customer, the funds he holds at Ameriprise have been owned and controlled by McMillan, and can be spent, withdrawn or transferred away from Ameriprise by him at any time.

The evidence also showed that the RiverSource Annuity is a deferred variable annuity, and that McMillan is both the owner and annuitant of the annuity. Under the terms of the annuity, McMillan can designate or change beneficiaries and assign the annuity or an interest in it. He also has the right to direct the amount, frequency, and allocation of the funds to specific investment subaccounts. In addition, because the annuity has not been annuitized, McMillan can

4

withdraw some or all of the funds from the annuity up to its cash value, although he may incur surrender charges if the withdrawal exceeds a certain amount. When McMillan withdraws all or part of the cash value of the annuity, Appellees must generally pay the funds to McMillan within seven days.

Hearne filed a response to the motion for summary judgment and objections to the Callaway affidavit. Hearne argued that Appellees were transferees under TUFTA because McMillan gave up an interest in the funds in exchange for a guaranteed monetary return on his investment, which some courts have found to be a transfer under some state's Uniform Fraudulent Transfer Acts. He also argued that the good-faith defense was not available to Appellees because the evidence showed that Callaway was aware McMillan had been sued and that there were at least fact questions regarding (1) whether Callaway understood that McMillan sought to put his assets out of the reach of any potential judgment and (2) whether the Appellees had inquiry notice but failed to investigate. He also challenged the Appellees' claim that they were *in rem* defendants only. Hearne also asserted objections to ten statements in the Callaway affidavit.

As relevant to this opinion, Hearne's evidence in support of his response showed that, on February 2, 2018, McMillan told Callaway he wanted to withdraw $13,000.00 out of the RiverSource Annuity and that Callaway confirmed that McMillan could withdraw $35,583.02 from the annuity without a surrender charge. In addition, between January 1, 2020, and December 31, 2020, McMillan withdrew $22,500.00 from the RiverSource Annuity but incurred no surrender charges.

5

At the hearing on the motion for summary judgment, the parties argued consistently with their motion and response. Appellees also asserted that, at that time, McMillan could withdraw all the funds in the RiverSource Annuity but that, if it was subsequently annuitized to turn into monthly payments, he would not be able to withdraw the principal. Hearne did not dispute that, although he pointed out that there would be surrender fees. After hearing the arguments on the motion and on Hearne's objections to the Callaway affidavit, the trial court granted the motion for summary judgment without stating its grounds, overruled Hearne's objections to the Callaway affidavit, and retained Appellees as *in rem* parties only, "with no liability for any deficiency in the net value of assets held for . . . McMillan which may be available to satisfy a Judgment against McMillan in this cause, if any."

## II.    Standard of Review for Traditional Summary Judgment

We review the trial court's grant of a summary judgment de novo. *Brown v. CitiMortgage, Inc.*, No. 06-14-00105-CV, 2015 WL 2437519, at *2 (Tex. App.—Texarkana May 22, 2015, no pet.) (mem. op.) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)). "In making the required review, we deem as true all evidence which is favorable to the nonmovant, we indulge every reasonable inference to be drawn from the evidence, and we resolve any doubts in the nonmovant's favor." *Id.* (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005)). "When the trial court does not specify the basis for its ruling, we must affirm a summary judgment if any of the grounds on which judgment is sought are meritorious." *Id.* (citing *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013)).

"To be entitled to traditional summary judgment, a movant must establish that there is no genuine issue of material fact so that the movant is entitled to judgment as a matter of law." *Id.* (citing TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009)). "Once the movant produces evidence entitling it to summary judgment, the burden shifts to the nonmovant to present evidence raising a genuine issue of material fact." *Id.* (citing *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996)). "A defendant who conclusively negates a single essential element of a cause of action or conclusively establishes an affirmative defense is entitled to summary judgment on that claim." *Id.* (citing *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex. 2010)). "A traditional motion for summary judgment must stand on its own merits, and the nonmovant may argue on appeal that the movant's summary judgment proof is insufficient as a matter of law, even if the nonmovant filed no response to the motion." *Galindo v. Snoddy*, 415 S.W.3d 905, 909 (Tex. App.— Texarkana 2013, no pet.) (citing *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam)).

## III.    TUFTA

"TUFTA's purpose is to prevent debtors from prejudicing creditors by improperly moving assets beyond their reach." *Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 566 (Tex. 2016) (citing *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 89 (Tex. 2015)). "Under TUFTA, a transfer made with actual or constructive intent to defraud any creditor may be avoided to the extent necessary to satisfy the creditor's claims." *Id.* As applicable to this case, "[a] transfer made . . . . by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or

7

within a reasonable time after the transfer was made . . . , if the debtor made the transfer. . . . with actual intent to hinder, delay, or defraud any creditor of the debtor." TEX. BUS. & COM. CODE ANN. § 24.005(a)(1). A "'[t]ransfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." TEX. BUS. & COM. CODE ANN. § 24.002(12).

If the creditor is successful in showing the transfer was fraudulent as to it, the creditor, "subject to the limitations in Section 24.009" of the Business and Commerce Code,

> may obtain:
>
> (1)    avoidance of the transfer . . . to the extent necessary to satisfy the creditor's claim;
>
> (2)    an attachment or other provisional remedy against the asset transferred or other property of the transferee . . . ;
>
> (3)    subject to applicable principles of equity and in accordance with applicable rules of civil procedure:
>
> > (A)    an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;
> >
> > (B)    appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or
> >
> > (C)    any other relief the circumstances may require.

TEX. BUS. & COM. CODE ANN. § 24.008(a). In addition, if the creditor obtains a judgment against the debtor on its claim, it can "levy execution on the asset transferred or its proceeds." TEX. BUS. & COM. CODE ANN. § 24.008(b).

8

Section 24.009 provides an affirmative defense to "a person who took in good faith and for reasonably equivalent value." TEX. BUS. & COM. CODE ANN. § 24.009(a); *Janvey v. GMAG, L.L.C.*, 592 S.W.3d 125, 129 (Tex. 2019). If the person establishes the defense, then the transfer "is not voidable under Section 24.005(a)(1)," and the transferee may keep the transferred asset. TEX. BUS. & COM. CODE ANN. § 24.009(a); *GMAG, L.L.C.*, 592 S.W.3d at 126. However, if a transferee does not establish the affirmative defense, the creditor, subject to exceptions not applicable to this case, "may recover judgment [against the transferee] for the value of the asset transferred, as adjusted under Subsection (c) of this section, or the amount necessary to satisfy the creditor's claim, whichever is less." TEX. BUS. & COM. CODE ANN. § 24.009(b). In addition, "if the judgment under Subsection (b) of this section is based upon the value of the asset transferred, the judgment must be for an amount equal to the value of the asset at the time of the transfer, subject to adjustment as the equities may require." TEX. BUS. & COM. CODE ANN. § 24.009(c). Nevertheless, TUFTA does not define "transferee."

## IV.    Appellees Are Not Transferees Under TUFTA

In his first issue, Hearne asserts that the trial court erred in granting summary judgment because the Appellees failed to establish that they are not transferees of the funds under TUFTA. Hearne acknowledges that TUFTA does not define transferee but points to the broad definition of transfer under TUFTA and the remedies available to a creditor against transferees to argue for an equally broad definition of transferee.[3] Hearne also argues that, generally under an annuity, a

---

[3]Hearne cites *Trigeant Holdings, Ltd. v. Jones*, 183 S.W.3d 717, 726 (Tex. App.—Houston [1st Dist.] 2005, pet. denied); *Airflow Houston Inc. v. Theriot*, 849 S.W.2d 928, 934 (Tex. App.—Houston [1st Dist.] 1993, no writ); and *Gutierrez v. Givens*, 1 F.Supp.2d 1077, 1087 (S.D. Cal. 1998), in support of his argument. However, both *Trigeant Holdings* and *AirFlow Houston* involved companies to which the debtor (business) transferred assets for either no

9

person pays a premium in return for a guaranteed income stream for a specific period and, thus, gives up an interest in the funds paid. He argues that the RiverSource Annuity was no exception, but then points out that, under the terms of the annuity, McMillan could convert the annuity back to cash but would have to pay a surrender charge if he did so. Consequently, he argues, McMillan is no longer the owner of the money he deposited, but rather, he owns the annuity contract.[4]

---

consideration or for less than fair-market value. Further, in each case, the owner of the debtor or one of his family members was a beneficiary of the transaction. *See Trigeant Holdings*, 183 S.W.3d at 721–22; *AirFlow Houston*, 849 S.W.2d at 930. For these reasons, the transferee companies were clearly transferees under TUFTA. These cases do not address the issue of whether a financial services company or an insurance company that holds and invests the annuity funds on behalf of its client, but has not acquired an interest in the assets, is a transferee under TUFTA. In *Gutierrez*, it was alleged that Colonial Bank, which was controlled by Givens, conspired with Givens to transfer his assets beyond the reach of his creditors. *Gutierrez*, 1 F.Supp.2d at 1080. The plaintiffs alleged that Colonial Bank both knew the fraudulent purpose of the transfers and facilitated the transfers. *Id.* Colonial filed a motion to dismiss the plaintiffs' claims under California's UFTA and argued that the remedies of the CUFTA section comparable to TUFTA's Section 24.009 were not applicable to it because it was not a transferee. *Id.* at 1087. The federal district court acknowledged that the bank was not a transferee, but nevertheless denied the motion because, considering the allegations of the bank's complicity in the fraudulent transfers, it had failed to establish that it would not be liable under the CUFTA section comparable to TUFTA's Section 24.008(a)(3)(C). *Id.*

[4]In support of his argument, Hearne cites *In re Levine*, 134 F.3d 1046, 1049–50 (11th Cir. 1998), and *Leibman v. Grand*, 981 S.W.2d 426, 435 (Tex. App.—El Paso 1998, no pet.). However, in *In re Levine* the annuity contract was not in the record, and the court relied on its understanding of annuities generally to determine that, because "an individual who purchases an annuity . . . does not retain total control over the asset" and lacks "unfettered access to the full amount of" the funds, the purchase of an annuity, in that case, was a transfer under Florida's Uniform Fraudulent Transfers Act. *In re Levine*, 134 F.3d at 1050. Consequently, it concluded that the debtor's transfer of assets from non-exempt to exempt by purchasing an annuity was a transfer under FUFTA. *Id.* However, the issue of whether the insurance company that issued the annuity was a transferee was not before the court. *See id.* at 1048.

As in *In re Levine*, the question of whether a financial company that had opened an annuity account for the debtor was a transferee was not an issue in *Liebman*. Neither did the court consider whether the debtor's purchase of the annuity was a transfer under TUFTA. Rather, the issue was whether the cash-surrender value of the annuity was exempt from the debtor's creditor under former Article 21.22, Section 1, of the Texas Insurance Code. *Liebman*, 981 S.W.2d at 430; *see* Act of May 30, 1993, 73d Leg., R.S., ch. 685, § 20.20, 1993 Tex. Gen. Laws 2559, 2706 (repealed 2003) (codifying former Article 21.22, Section 1, of the Texas Insurance Code, which was recodified at TEX. INS. CODE § 1108.051). The court acknowledged that, under Article 21.22, Section 1, an annuity is fully exempt from execution by the creditor. *Liebman*, 981 S.W.2d at 430. But it noted that Article 21.22, Section 3, provided that those exemptions did not apply to premium payments made in fraud of creditors. *Liebman*, 981 S.W.2d at 430; *see* Act of May 24, 2001, 77th Leg., R.S., ch 1023, § 75, 2001 Tex. Gen. Laws 2240, 2265–66 (repealed 2003) (codifying former Article 21.11, Section 3, which was recodified at TEX. INS. CODE § 1108.053). Because the evidence supported the trial court's finding that the debtor purchased the annuity with intent to defraud his creditor, *Liebman*, 981 S.W.2d at 433, and that non-exempt funds were used to purchase the annuity, *id.* at 436,

10

Appellees rely on the dominion or control test, discussed below, and argue that, under that test, they have established that they are not transferees under TUFTA. They also argue that the summary judgment evidence shows that McMillan has not relinquished the funds used to purchase the RiverSource Annuity and that the annuity was in the accumulation stage, which allows the money to be invested and grow, tax-deferred, until it is annuitized. Although they acknowledge that McMillan has an option to annuitize the funds invested in exchange for a guaranteed income, during the accumulation stage, McMillan can access the funds and withdraw all or part of the funds although he may incur surrender charges if the withdrawal exceeds a certain amount of the principal.[5]

### A. Who is a Transferee Under TUFTA?

As noted earlier, TUFTA does not define "transferee." In construing the meaning of "good faith," another term not defined under TUFTA, the Texas Supreme Court noted that, "[w]hen a statute does not define a word or phrase, we look to its plain or common meaning." *GMAG, L.L.C.*, 592 S.W.3d at 129 (citing *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015) (orig. proceeding). Also, because "principles of law and equity . . . supplement [TUFTA's] provisions," *id.* (quoting Tex. Bus. & Com. Code Ann. § 24.011), "[the Court] also consider[s] the common law in determining the meaning of good faith," *id.* It then examined both the definition of good faith in Black's Law Dictionary and the common law meaning of good faith

---

the court held that the trial court did not err in issuing a turnover order in regard to the cash-surrender value of the annuity. *Id.*

[5]The summary judgment evidence shows that the surrender charges began at seven percent and declined over time to zero after the seventh year. The evidence also shows that McMillan made withdrawals but had not incurred surrender charges.

11

and concluded that good faith under TUFTA was consistent with the principles expressed both in the plain or common meaning and in the common law of Texas. *Id.*

"Transferee" has been defined as "[o]ne to whom a property interest is conveyed," *Transferee*, BLACK'S LAW DICTIONARY (11th ed. 2019), and as "a person to whom a conveyance is made," *Transferee*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2006). "Convey" has been defined as "[t]o transfer or deliver (something, such as a right or property) to another," *Convey*, BLACK'S LAW DICTIONARY (11th ed. 2019), and "conveyance" has been defined as "[t]he voluntary transfer of a right or of property," *Conveyance*, BLACK'S LAW DICTIONARY (11th ed. 2019).

Texas common law has also spoken as to who is a transferee under TUFTA, at least, as in this case, when the asset is monetary. Because of the similarity between the United States Bankruptcy Code provisions regarding the avoidance of transfers made to hinder, delay, or defraud creditors and TUFTA's provisions,[6] the Fourteenth Court of Appeals looked to the United States Court of Appeals for the Fifth Circuit's definition of a transferee, for purposes of the Bankruptcy Code, in *In re Coutee*, 984 F.2d 138, 141 (5th Cir. 1993) (per curiam). *Newsome v. Charter Bank Colonial*, 940 S.W.2d 157, 165 (Tex. App—Houston [14th Dist.] 1996, writ denied) (examining *In re Coutee*). In *In re Coutee*, the Fifth Circuit adopted the "dominion or control test" used by other circuit courts of appeals. *In re Coutee*, 984 F.2d 138, 140–41 (5th Cir. 1993). Under this test, "dominion over funds means the right to put the money to one's own use," *id.* at 141 (citing *Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 893 (7th

---

[6]*Compare* 11 U.S.C.A. § 548(a)(1) *with* TEX. BUS. & COM. CODE ANN. § 24.005(a); *compare* 11 U.S.C.A. § 550(a), (b) *with* TEX. BUS. & COM. CODE ANN. § 24.009(a), (b).

Cir. 1988)), and "an entity does not have dominion over the money until it is, in essence, 'free to invest the whole [amount] in lottery tickets or uranium stocks' if it wishes." *Id.* (quoting *Bonded Fin. Servs., Inc.*, 838 F.2d at 894). In adopting this test, the Fifth Circuit held that a law firm that placed settlement funds in a trust account for its client and paid some of the funds to satisfy a loan it had obtained for the client was not a transferee. The Fifth Circuit explained:

> As the district court noted, the funds were deposited into the firm's trust account, as opposed to its business account, indicating that they were held merely in a fiduciary capacity for the Coutees. Moreover, the negotiations regarding the firm's legal fees, which occurred after it received the funds, indicate that the firm was not free at that time simply to keep the money. The only control exercised over the funds was the control delegated to the law firm by the Coutees.

*Id.*

In *Newsome*, the creditor had garnished the bank accounts of the debtor, Johnson, but did not name the debtor's wife or any other third party as a judgment debtor. *Newsome*, 940 S.W.2d at 162. The Newsomes contended that the Bank should have impounded the funds in the accounts owned by the debtor's wife and other parties because it knew or should have known that the debtor was depositing income into accounts owned by his wife, other family members, or employees, and that the Bank was liable under TUFTA as transferees. *Id.* at 160, 164. While it acknowledged that the Bank engaged in a number of imprudent transactions with the debtor, the court of appeals held that "the Bank did not own the[] funds or otherwise benefit from the[] transactions, but was simply complying with its depositors' instructions to pay [the debtor]. As such, the Bank was merely a 'financial conduit or intermediary' in the collection process." *Id.* at 166 (citing *In re Coutee*, 984 F.2d at 141 n.3). Consequently, "the Bank was not a transferee, [and] there was no transfer giving rise to liability on the part of the Bank under" TUFTA. *Id.*

13

In *Williams v. Performance Diesel, Inc.*, No. 14-00-00063-CV, 2002 WL 596414 (Tex. App.—Houston [14th Dist.] Apr. 18, 2002, no pet.), the Fourteenth Court of Appeals again applied the dominion or control test to determine whether a financial services company was a transferee under TUFTA.  In that case, Plato and Ford fraudulently obtained proceeds from the sale of bonds belonging to an insurance company and diverted the money through companies they controlled.  Those companies issued checks to Merrill Lynch with instructions to open cash management accounts (CMAs) in the names of Plato and Ford.  *Id.* at *1.  The commissioner of insurance brought TUFTA claims against several defendants, including Merrill Lynch, and sought to hold them liable for the funds transferred to them.  *Id.*

The court of appeals noted that "Merrill Lynch accepted cash from [the companies] for the purpose of opening CMAs for Plato and Ford," that the "accounts were multi-functional and offered the capacity to buy, sell, and hold securities, write checks, and make Visa charges," and that they "contained a provision that unassigned cash was to be automatically swept into money funds pre-selected for that purpose by the account holder."  *Id.* at *6.  The court rejected the commissioner's contention that Merrill Lynch was a transferee because the opening of the "accounts by checks drawn from [the companies] were no more than the purchase of securities for Plato and Ford."  *Id.*  In holding that Merrill Lynch was merely acting as a financial conduit between the companies and Plato and Ford, the court noted that the terms of the CMA agreements provided that "only the parties in whose names the accounts were opened could direct the distribution or transfer of funds from the accounts," *id.*, and "that Merrill Lynch lacked the discretion to transfer any funds from the accounts without the express permission of the

14

account holders," *id.* at *7. Consequently, Merrill Lynch never "obtain[ed] dominion or control over the funds." *Id.*

In *Sourcing Management, Inc. v. Simclar, Inc.*, 118 F.Supp.3d 899 (N.D. Tex. 2015), the court noted that, although TUFTA does not define a transferee, "a party is a transferee if it has 'legal dominion or control' over the assets in question." *Id.* at 916. Under the dominion or control test, "[f]actors a court should consider in determining whether a party is a 'transferee' include whether the party has complete legal title, unfettered discretion to pay creditors, and the lack of any agreement restricting access to or use of the funds." *Id.* (citing *Andres Holding Corp. v. Villaje Del Rio, Ltd.*, Nos. SA-09-CV-127-XR, SA-09-CV-268-XR, 2011 WL 860529, at *12 (W.D. Tex. Mar. 8, 2011) (order)). It went on to note that "[a] recipient of funds is not a transferee, for example, if it holds the funds only in a fiduciary capacity, and has no legal right to put the funds to its own use." *Id.* (quoting *Andres Holding Corp.*, 2011 WL 860529, at *12).

In *Andres Holding Corp.*, the trial court used the dominion or control analysis to determine whether a general contractor had established that it was not a transferee under TUFTA. *Andres Holding Corp. v. Villaje Del Rio, Ltd.*, Nos. SA-09-CV-127-XR, SA-09-CV-268-XR, 2011 WL 860529, at *12 (W.D. Tex. Mar. 8, 2011) (order). The court denied Andres's motion for summary judgment on the creditor's action to void a transfer under TUFTA. In doing so, the court rejected Andres's argument that it was not a transferee because it lacked dominion or control over payments made to it because it was merely a trustee of the funds for distribution to subcontractors and suppliers. *Id.* The court noted that, under the dominion or control analysis, "'complete legal title,' 'indicia of ownership,' 'unfettered discretion' to pay creditors,

15

and lack of any 'agreement . . . restricting . . . access to or use of the funds' weigh in favor of finding transferee status." *Id.* (quoting *In re Southmark Corp.*, 49 F.3d 1111, 1114, 1116 (5th Cir. 1995)). Because Andres did not provide any "evidence to suggest that it lacked unfettered control over the funds," "that it lacked ownership or legal title over the funds, or that it was subject to any agreement restricting the use of the funds with regard to its subcontractors," the court denied summary judgment. *Id.*

### B.     Analysis

The Texas Supreme Court in *GMAG, L.L.C.*, has directed that, in determining undefined terms under TUFTA, we should consider both the plain or common meaning and the common-law interpretation of those terms. *GMAG, L.L.C.*, 592 S.W.3d at 129. As noted above, there are both state and federal cases from Texas that have applied the dominion or control test in determining whether a party is a transferee under TUFTA in cases involving financial institutions, financial service companies, and general contractors. *See, e.g.*, *Performance Diesel, Inc.*, 2002 WL 596414, at *6–7; *Newsome*, 940 S.W.2d at 166; *Andres Holding*, 2011 WL 860529, at *12; *see also Rotstain v. Trustmark Nat'l Bank*, No. 3:09-CV-2384-N, 2015 WL 13034513, at *6 (N.D. Tex. Apr. 21, 2015) (order) (applying dominion or control test to determine whether financial institution was a transferee under TUFTA).

While we recognize that TUFTA's definition of a transfer is broad, we also note that that broad definition is designed to promote TUFTA's purpose of "prevent[ing] debtors from prejudicing creditors by improperly moving assets beyond their reach." *Golf Channel, Inc.*, 487 S.W.3d at 566. The broad definition of transfer accomplishes that purpose by subjecting almost

16

any form of conveyance a debtor attempts to make to the remedies provided by TUFTA. Thus, the definition of transfer focuses on the debtor and its attempt to move its assets beyond the reach of creditors. In contrast, the dominion or control test, at least in relation to financial institutions, financial service companies, and insurance companies offering financial or investment services that hold or invest funds on behalf of their clients, focuses on the realities of the relationship between the debtor, the funds, and the holder of those funds.

By way of illustration, after a money judgment is entered against her, Sarah opens an investment account with ABC financial services company and funds it from her non-exempt savings account. ABC invests the funds in a variety of investments, including stocks, bonds, and mutual funds, and charges fees for maintaining the account and its investment services. Sarah remains the owner of the account, and ABC is obligated to return the value of the account to Sarah within a certain time after her demand, subject to any penalties, charges, or lost interest that may be incurred as a result of the sale or early redemption of the investments. In this scenario, although ABC holds and invests the funds Sarah placed in the account, it holds and invests those funds on behalf of Sarah and subject to her discretion, as owner of the account, to remove all or part of the funds in her account. Sarah's intent may well bring the transfer within the broad meaning of TUFTA's intent-focused definition of "transfer." TEX. BUS. & COM. CODE ANN. § 24.005(a)(1) (defining a transfer as fraudulent "if the debtor made the transfer . . . with actual intent to hinder, [or] delay"). Sarah's intent notwithstanding, though, the need for Sarah's creditors to resort to TUFTA is not apparent; because the account is non-exempt, Sarah's creditors would be able to reach the funds through execution or a turnover order against Sarah.

17

Suppose, though, that, after realizing her creditors can reach her non-exempt investment account with ABC, Sarah opens an IRA investment account with ABC financial services company and transfers the assets from her non-exempt investment account to the IRA account. In this scenario, because the account and the investments are part of Sarah's IRA, they would be exempt assets. This transaction, given Sarah's intent, would also be a transfer under TUFTA. Here, though, the practical and legal effects of Sarah's actions require closer examination because of the exempt status typically afforded to IRA accounts. *See* TEX. PROP. CODE ANN. § 42.0021(a)(4) (Supp.). Under this scenario, is ABC a transferee under TUFTA? If we relied on the broad definition of transfer under TUFTA, the answer may be yes. And if we relied only on the plain or common meaning of transferee, the answer may also be yes, since Sarah delivered property (her money) to ABC, which now holds her funds. But the dominion or control test examines the reality of the relationship to determine whether ABC is a transferee: Sarah still owns the funds, in the form of the investments, and she is free to treat the funds as her own, including redeeming all or part of the funds at any time and investing the funds elsewhere. Although ABC holds and invests the funds Sarah placed in the account, it still holds and invests those funds on behalf of Sarah and subject to her discretion, as owner of the account, to remove all or part of the funds. ABC does not own the funds, and its control of the funds is subject to its obligations to Sarah. In other words, the relationship between Sarah, her assets, and ABC is the same whether the assets are in the non-exempt account or in the exempt account.

Under this scenario, Sarah has once again made a transfer within the meaning of TUFTA. This time she has transferred the assets beyond the reach of her creditors by moving the funds to

an exempt account. Accordingly, TUFTA, and its remedies that enable the creditor to reach those assets, would have more practical relevance. *See* TEX. BUS. & COM. CODE ANN. § 24.008(a). But to whom did Sarah transfer the assets? She transferred the assets from Sarah, as owner of a non-exempt account, to Sarah, as owner of an exempt account. ABC did not gain any additional rights, dominion, or control over the assets. As a result, if there was a transferee under TUFTA, it was Sarah, as owner of an exempt account, not ABC. Because Sarah's transfer implicates TUFTA, but ABC is not a transferee, the creditor's TUFTA claims apply only to Sarah.

As a result, in accordance with *GMAG, LLC*, we consider the plain meaning of transferee, as modified by the dominion or control test, to determine whether Appellees, under the facts of this case, are transferees under TUFTA. In doing so, we consider the relationship between McMillan, the contested assets, and Appellees and weigh relevant factors, such as complete legal title, indicia of ownership, the unfettered discretion to pay creditors, and whether there is an agreement that restricts Appellees' access to or use of the funds. *See Williams*, 2002 WL 596414, at *6–7; *In re Coutee*, 984 F.2d at 140–41; *Sourcing Mgmt., Inc.*, 118 F.Supp.3d at 916; *Andres Holding*, 2011 WL 860529, at *12.

Appellees' summary judgment evidence in this case showed that the RiverSource Annuity purchased by McMillan is a deferred variable annuity contract, which at the time of the summary judgment was in the accumulation phase.[7] During the accumulation phase of the

---

[7]*See Variable annuity,* INVESTOPEDIA, https://www.investopedia.com/terms/v/variableannuity.asp (last visited May 4, 2023).

annuity, the investment seeks to grow the cash value of the annuity.[8]  During this phase, McMillan, as owner of the annuity, has the right to direct the amount, frequency, and allocation of the funds to specific investment subaccounts.  McMillan also has the right to withdraw funds, or take distributions from any of the subaccounts in the annuity, up to the total cash value of the annuity, although he may incur surrender charges (which may be as high as seven percent) and tax penalties.[9]  Under the terms of the annuity contract, when Hearne withdraws all or part of the cash value of the annuity, Appellees must generally pay the funds to McMillan within seven days.  Hearne did not offer any summary judgment evidence that refutes or raises an issue of material fact as to any of this evidence.[10]

This evidence shows that, at this phase of the RiverSource Annuity, Appellees do not have legal title to the funds, they hold and invest the funds on behalf of McMillan.  According to his direction as to the amount, frequency, and allocation of the funds, they invest and hold the funds subject to McMillan's discretion to withdraw some or all of the funds.  Under these facts, we find that Appellees are not transferees under TUFTA.

---

[8]*See Accumulation phase*, INVESTOPEDIA, https://www.investopedia.com/terms/a/accumulationphase.asp (last visited May 4, 2023).

[9]Appellees acknowledge that, under the annuity, McMillan may choose to enter the annuitization or payout phase, in which he exchanges the principal balance in his account for guaranteed lifetime payments.  In the trial court, they also acknowledged that, in the annuitization phase, McMillan would not be able to withdraw the principal.

[10]Almost all of Hearne's summary judgment evidence went to the issue of whether Appellees acted in good faith. The only evidence Hearne produced related to the transferee issues supported Appellees' contention that McMillan was able to withdraw funds from the accounts in the RiverSource Annuity.  That evidence included (1) Callaway's SmartPad Notes from February 2, 2018, which indicated that McMillan wanted to withdraw $13,000.00 out of the annuity and that he could withdraw $35,583.02 without a surrender charge and (2) McMillan's Ameriprise statement for the period January 1, 2020, through December 31, 2020, which reflected $22,500.00 in withdrawals from the RiverSource Annuity with no surrender charges.

Nevertheless, Hearne argues that we should not apply the common-law definition of transferee. He distinguishes *In re Coutee* because it determined whether the law firm was an initial transferee under Section 550(a)(1) of the Bankruptcy Code. *See* 11 U.S.C.A. § 550(a)(1). He points out that, as noted by *In re Coutee*, under the Bankruptcy Code, the trustee may avoid a fraudulent transfer against the initial transferee irrespective of whether it took the transfer in good faith and paid equivalent value. *See In re Coutee*, 984 F.2d at 140 n.2 (citing 11 U.S.C.A. § 550(b)(1)); 11 U.S.C.A. § 550(a)(1)). In contrast, he argues, TUFTA provides for a good-faith defense for the first transferee that allows it to prevent avoidance of the transfer. *See* TEX. BUS. & COM. CODE ANN. § 24.009(a). He argues that, in the case of an annuity, a financial services company receives the premium in return for future services, and it may ultimately be able to invest them however it wishes. He argues that, since Appellees have some control over the funds, they should be held to be transferees.

However, Hearne's interpretation would lead to absurd results. *See Worsdale v. City of Killeen*, 578 S.W.3d 57, 73 (Tex. 2019) ("Construing statutes to avoid 'glaringly absurd' results 'has long been a judicial function.'" *Armstrong Paint & Varnish Works v. Nu-Enamel Corp.*, 305 U.S. 315, 333 (1938)). Section 24.009(a) "protects a transferee against avoidance of a fraudulent transfer . . . if it can prove it 'took in good faith and for a reasonably equivalent value.'" *GMAG, L.L.C.*, 592 S.W.3d at 129 (quoting TEX. BUS. & COM. CODE ANN. § 24.009(a)). In other words, "[i]f the transferee proves as an affirmative defense that it acted in good faith and the transfer was for a reasonably equivalent value, it may keep the transferred asset." *Id.* at 126. In this case, McMillan is alleged to have transferred non-exempt funds to an

21

exempt annuity to defraud Hearne.  The summary judgment evidence shows that McMillan is the owner and beneficiary of the annuity.  If Appellees are held to be transferees of the funds used to purchase the annuity and Appellees prove the affirmative defense under Section 24.009(a), then Appellees may keep the funds in the annuity, and Hearne will not be able to reach the funds.  In such a case, McMillan will be free to withdraw some or all of the funds until the annuity is annuitized and, afterwards, to receive the monthly benefits to be paid under the annuity.

Yet, this goes directly against the purpose and remedies provided by TUFTA, which, as seen above, gives creditors broad remedies to recover assets that are transferred by a debtor with the intent to hinder, delay, or defraud the creditors.  In addition, Hearne's interpretation would raise a potential conflict between Section 24.009(a) and the Texas Insurance Code.  The Texas Insurance Code exempts the benefits, "including the cash value and proceeds" of an annuity, from garnishment, attachment, execution, or other seizure to pay the debt or other liability of the beneficiary.  TEX. INS. CODE ANN. § 1108.051(a)(2), (b).  However, if the premiums used to purchase the annuity are paid in fraud of a creditor, the exemptions provided by Section 1108.051 do not apply.  TEX. INS. CODE ANN. § 1108.053(1).  Yet, if the financial service company is held to be a transferee under TUFTA and it proves its affirmative defense under Section 24.009(a), it gets to keep the funds used to purchase the annuity.  As a result, under Hearne's interpretation, a conflict would arise between TUFTA and Section 1108.053.

By applying the plain meaning of transferee, as modified by the common law regarding funds held by entities who do not have dominion or control over the funds, we recognize that the owner and beneficiary of the annuity is McMillan, and because McMillan is Hearne's debtor,

22

Hearne is able to reach the otherwise exempt annuity under both TUFTA and the Texas Insurance Code, assuming he is able to prove his allegations that the purchase of the annuity was a fraudulent transfer.

We find that, under the facts of this case, Appellees have shown as a matter of law that they are not transferees under TUFTA. As a result, we find that the trial court did not err in finding that Appellees were not transferees under TUFTA. We overrule Hearne's first issue.[11,12]

## V.    Conclusion

For the reasons stated, we affirm the trial court's judgment.

Scott E. Stevens
Chief Justice

Date Submitted:     April 19, 2023
Date Decided:      May 16, 2023

---

[11]In his second issue, Hearne asserts that the trial court erred in finding Appellees acted in good faith. This issue is necessarily premised on a finding that Appellees were transferees under TUFTA. See TEX. BUS. & COM. CODE ANN. § 24.009(a). In his third issue, Hearne asserts that the trial court erred in overruling his objections to Appellees' summary judgment evidence. However, Hearne's objections were to certain statements contained in Callaway's affidavit, all of which were only relevant to the issue of good faith. Because we have determined that Appellees were not transferees under TUFTA and because that finding is a sufficient basis for the trial court's summary judgment in favor of Appellees, we need not address Hearne's second and third issues.

[12]Hearne also asserts for the first time on appeal that, even if Appellees are not transferees as to the funds in the RiverSource Annuity, they are transferees as to the fees and charges related to the annuity, citing *Rotstain*, 2015 WL 13034513, at *6. However, "all theories in support of a summary judgment, as well as all opposing issues, must be presented in writing to the court at the hearing." *Casso v. Brand*, 776 S.W.2d 551, 553 (Tex. 1989); *see* TEX. R. CIV. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."). Further, the trial court's judgment must conform to the pleadings. *See* TEX. R. CIV. P. 301. In his response to Appellees' motion for summary judgment, Hearne did not contend that Appellees were transferees as to any fees or charges they received related to the annuity. Also, unlike the plaintiffs in *Rotstain*, in his live pleading below, Hearne did not seek recovery of any fees or charges related to the annuity that were received by Appellees or make any allegations that Appellees were liable for any such fees or charges. *See Rotstain*, 2015 WL 13034513, at *6. Because we may not reverse a trial court's summary judgment on issues not expressly presented to it in a written response, and because Hearne's live pleadings do not seek recovery of any fees or charges related to the annuity, we overrule this issue.